UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                         Case No. 09-20093
v.                                     Hon. Gerald E. Rosen

FREDRICK EUGENE BLACK,

       Defendant.
_____/

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     September 11, 2009

PRESENT: Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I. INTRODUCTION

Defendant Fredrick Eugene Black is charged in a March 3, 2009 indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). This charge stems from a traffic stop on December 10, 2008 at around 10:00 p.m., when a vehicle Defendant was driving was stopped by two City of Detroit police officers for an alleged violation of a Detroit noise ordinance. According to the testimony presented at a July 27, 2009 evidentiary hearing, as one of the officers approached Defendant's vehicle, he illuminated the passenger compartment with his flashlight as an officer safety measure, and observed Defendant removing a handgun from the right side of his waist

and placing it in the vehicle's center console. In light of this observation, Defendant was ordered out of the vehicle, and a *Terry* frisk of Defendant revealed a nylon gun holster on the right side of his waistband. Defendant was then placed under arrest, and a search of the vehicle incident to this arrest led to the recovery of a Sturm Ruger 9mm handgun with a defaced serial number in the vehicle's center console.

By motion to suppress filed on May 12, 2009, Defendant seeks to challenge the lawfulness of both the initial stop of his vehicle and the search of his vehicle following this traffic stop. The Court held an evidentiary hearing on this motion on July 27, 2009.[1] For the reasons stated on the record at the conclusion of this hearing, as supplemented by the rulings below, the Court finds that this motion must be denied.

## II. ANALYSIS

Defendant's motion rests in part upon his contention in a supplemental brief that the initial traffic stop that led to his arrest was predicated on a City of Detroit noise ordinance that is constitutionally overbroad in its infringement upon protected First Amendment speech. This ordinance states:

> Sec. 36-1-1. Unreasonable noise prohibited; restrictions on sound from motor vehicles.

---

[1] At this hearing, the Court also addressed a motion in limine filed by Defendant, through which he sought to preclude the Government from seeking to introduce evidence of his prior convictions at trial. Following argument on this motion, the Court granted it in part and denied it in part, but indicated that the matter would be revisited upon seeing the parties' proofs at trial. Having reviewed the parties' supplemental briefs filed after the July 27 hearing, the Court remains of the view that any further consideration of this matter must await the presentation of proofs at trial.

>    (a)  It is unlawful for any person to unreasonably disturb the public peace and quiet, or to unreasonably disturb or annoy the quiet, comfort and repose of persons in the vicinity by shouting or whistling, by loud, boisterous, or vulgar conduct, or by the playing of a compact disc player, musical instrument, phonograph, radio, tape player, television, videotape machine, or any other device, equipment, or instrument that amplifies, produces, or reproduces sound, in any public or private place.
>
>    (b)  It is unlawful to operate or play a compact disc player, musical instrument, radio, tape player, or any other device, equipment, or instrument that amplifies, produces, or reproduces sound, from any parked or moving motor vehicle in such manner as to be plainly audible at a distance greater than ten (10) feet from the motor vehicle.

City of Detroit Ordinance 36-1-1.  Subsection (b) of this ordinance presumably provided the basis for the stop of Defendant's vehicle in this case.

As the starting point for his challenge to this ordinance, Defendant cites the Supreme Court's recognition that "[m]usic, as a form of expression and communication, is protected under the First Amendment."  *Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S. Ct. 2746, 2753 (1989).  Yet, despite these First Amendment implications, Defendant acknowledges that the City of Detroit may lawfully "impose reasonable restrictions on the time, place, or manner of" such protected expression, provided that "the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Ward,* 491 U.S. at 791, 109 S. Ct. at 2753 (internal quotation marks and citations omitted).[2]

---

[2]Defendant does not appear to contend that he was engaged in protected First Amendment activity at the time his vehicle was pulled over.  Nonetheless, in the context of

Defendant concedes that the City of Detroit has a legitimate interest "in protecting its citizens from unwelcome noise." *See Ward,* 491 U.S. at 796, 109 S. Ct. at 2756 (internal quotation marks and citations omitted). He further acknowledges that the City's noise ordinance primarily regulates conduct — namely, the transmission of sound through a car's CD player or radio — rather than speech. Finally, he concedes that "[t]he need to reduce and control noise has repeatedly been held to be a content neutral justification for laws that regulate the time, place or manner of protected speech," and that, more specifically, the City of Detroit ordinance in question "is content neutral." (Defendant's Suppl. Br. at 3.) Thus, Defendant's challenge to the Detroit noise ordinance rest solely on the proposition that its ten-foot limitation is not sufficiently narrowly tailored to serve the City's recognized interest in regulating noise levels. In his view, "[t]he meager distance of ten (10) feet . . . would criminalize playing music at permissible levels," and thus "could easily punish conduct that is constitutionally protected." (*Id.* at 4.)

As Defendant recognizes, the courts have rejected overbreadth challenges to ordinances that prohibit broadcasts of sound from motor vehicles that are plainly audible

---

overbreadth challenges, the Supreme Court has explained that "an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129, 112 S. Ct. 2395, 2400-01 (1992). "This exception from general standing rules is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth County,* 505 U.S. at 129, 112 S. Ct. at 2401.

4

at distances of 50 feet or more. *See, e.g., State v. Adams,* No. 02CA171, 2004 WL 1380494, at *2-*7 (Ohio Ct. App. June 14, 2004) (50 feet); *State v. Medel,* 80 P.3d 1099, 1102-03 (Idaho Ct. App. 2003) (50 feet); *People v. Arguello,* 765 N.E.2d 98, 101-03 (Ill. App. Ct. 2002) (75 feet); *Holland v. City of Tacoma,* 954 P.2d 290, 293-95 (Wash. Ct. App. 1998) (50 feet); *Davis v. State,* 710 So.2d 635, 636 (Fla. Dist. Ct. App. 1998) (100 feet). In addition, the Court's own research has uncovered additional cases in which noise ordinances similar to the Detroit ordinance at issue here were upheld against overbreadth challenges, even though they prohibited broadcasts of sound that were audible at distances less than 50 feet — and, in one case, as little as 5 feet away — from a motor vehicle. *See, e.g., Commonwealth v. Scott,* 878 A.2d 874, 879-81 (Pa. Super. Ct. 2005) (25 feet); *Schrader v. State,* No. 03-99-00780-CR, 2000 WL 1227866, at *2-*4 (Tex. Ct. App. Aug. 31, 2000) (30 feet); *Moore v. City of Montgomery,* 720 So.2d 1030, 1032-33 (Ala. Crim. App. 1998) (5 feet). Thus, it cannot be said that Detroit's noise ordinance sweeps significantly more broadly than similar ordinances that have been upheld by the courts.

Moreover, a regulation fails a First Amendment overbreadth challenge only "if it reaches a ***substantial number*** of impermissible applications relative to the law's legitimate sweep." *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville & Davidson County,* 274 F.3d 377, 387 (6th Cir. 2001) (emphasis added) (internal quotation marks and citation omitted). Similarly, in order to satisfy the "narrowly

tailored" prong of the "time, place, or manner" standard, a regulation "need not be the least restrictive or least intrusive means" of achieving the government's "legitimate, content-neutral interests," but need only promote these interests in a way "that would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at 798-99, 109 S. Ct. at 2757-58 (footnote, internal quotation marks, and citation omitted). While the Detroit noise ordinance might conceivably reach some protected activities that would escape scrutiny if the ordinance instead incorporated a 50- or 100-foot standard, it cannot be said that the ordinance in its present form sweeps in a "substantial" amount of protected activity relative to its legitimate ban on unreasonable and unwelcome noise. Surely, there cannot be an especially large universe of protected activity in motor vehicles that would produce "plainly audible" sound at a distance of 10 feet from the vehicle, but not 50 or 100 feet.

In any event, even if the Court were to conclude that there is constitutional significance in the difference between a 10-foot and an 50-foot prohibition, the remedy of exclusion would not be warranted. The Supreme Court has rejected the proposition that probable cause to make an arrest may be defeated by a subsequent judicial invalidation of the law under which the challenged arrest was made:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to

determine which laws are and which are not constitutionally entitled to enforcement.

*Michigan v. DeFillippo,* 443 U.S. 31, 38, 99 S. Ct. 2627, 2632 (1979); *see also United States v. Leon,* 468 U.S. 897, 911-12, 104 S. Ct. 3405, 3414 (1984) ("We have not required suppression of the fruits of a search incident to an arrest made in good-faith reliance on a substantive criminal statute that subsequently is declared unconstitutional."). Defendant has not identified any such flagrant overbreadth in the Detroit noise ordinance, such that the arresting officers could not have relied in good faith on this ordinance in stopping his vehicle.[3]

The remaining issues raised in Defendant's motion were largely resolved at the conclusion of the July 27 hearing. First, to the extent that Defendant denies that he violated the Detroit noise ordinance on the date in question, the uniform testimony of the two arresting officers was to the contrary, and the Court fully credited this testimony. Next, to the extent that Defendant challenges the lawfulness of the search of his vehicle following the initial traffic stop, the Government correctly observes that the arresting officers were lawfully permitted to peer inside Defendant's vehicle in the course of the traffic stop, and to seize without a warrant any evidence of criminal activity that they observed in plain view while looking into the vehicle. *See United States v.*

---

[3] Indeed, even if it were determined that the difference between a 10-foot and a 50-foot noise prohibition had constitutional significance, the testimony at the July 27 evidentiary hearing reflected that the arresting officers were able to hear music emanating from Defendant's vehicle at a distance much greater than 10 feet. Thus, the conduct of the arresting officers in this case does not implicate the supposedly suspect aspect of the Detroit ordinance.

*Weatherspoon,* 82 F.3d 697, 699 (6th Cir. 1996).  While Defendant suggests that the arresting officers "fabricated" their claim that they observed him removing a gun from his waistband and placing it in the vehicle's center console,[4] the Court once again credited the testimony of the arresting officers on this point.  It follows that the search was lawful.[5]

---

[4] As Defendant notes in his motion, in the wake of the Supreme Court's recent decision in *Arizona v. Gant,* 129 S. Ct. 1710 (2009), it can no longer be said that there is a broad right to search a vehicle incident to an arrest, regardless of whether the passenger compartment of the vehicle remains within the arrestee's reach at the time of the search or whether there is some other basis to believe that evidence relevant to the crime of arrest might be found in the vehicle. Rather, *Gant* holds that the police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," or where "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."  *Gant,* 129 S. Ct. at 1719 (footnote, internal quotation marks, and citation omitted).

In this case, the testimony at the July 27 hearing indicated that Defendant had been arrested and secured prior to the search of his vehicle, and there is no claim that the officers believed they would find evidence relevant to Defendant's violation of the Detroit noise ordinance when they searched his vehicle.  Accordingly, this search was lawful only if there was some independent basis for it.  The Government attempts to make this showing by pointing to the plain-view observation of one of the arresting officers, John McKee, that Defendant removed a gun from his waistband and placed it in the vehicle's center console.  Defendant acknowledges that this claim, if credited, would make the ensuing search lawful, but he disputes the veracity of this claim.

[5] At the conclusion of the July 27 hearing, the Court and counsel discussed the possibility that Defendant might yet uncover additional evidence as to the circumstances surrounding the December 10, 2008 traffic stop, his ensuing arrest, and the search of his vehicle.  For example, defense counsel sought the opportunity to explore whether the stop had been captured on videotape.  Accordingly, the Court took Defendant's motion to suppress under advisement, in order to afford him an opportunity to pursue these matters further.

Since the July 27 hearing, however, the Court has not been advised of any further evidentiary developments that might bear upon the proper disposition of Defendant's motion.  Accordingly, the Court has elected to rule on this motion, but without prejudice to Defendant's opportunity to revisit the Court's rulings as warranted by any such evidentiary developments.

### III.  CONCLUSION

For the reasons stated at the July 27, 2009 hearing, as supplemented by the rulings set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's May 12, 2009 motion to suppress evidence (docket #20) is DENIED.

                                      s/Gerald E. Rosen
                                      Chief Judge, United States District Court

Dated: September 11, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 12, 2009, by electronic and/or ordinary mail.

                                      s/Ruth Brissaud
                                      Case Manager